AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Western District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address.)* | ) | |
| a Dell Precision 7540 Laptop (S/N JZNGYY2), as | ) | Case No.  23-MJ-579 |
| further described in Attachment A | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, Christopher W. Toscano, a federal law enforcement officer, request a search warrant and state under penalty of perjury that there is reason to believe that there is now concealed on the following person or property located in the Western District of New York *(identify the person or describe property to be searched and give its location):*   a Dell Precision 7540 Laptop (S/N JZNGYY2), as further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*   See Attachment B, Items to be Searched for and Seized, all of which are evidence, contraband, fruits, and instrumentalities of violations of Title 18 United States Code, Sections 1512(c)(1) and 2252A(a)(5), and all of which are more fully described in the application and affidavit filed in support of these warrants, the allegations of which are adopted and incorporated by reference as if fully set forth herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    __X__ evidence of a crime;
    __X__ contraband, fruits of crime, or other items illegally possessed;
    __X__ property designed for use, intended for use, or used in committing a crime;
    _____ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. §§ 1512(c)(1) and 2252A(a)(5), and the application is based on these facts which are continued on the attached sheet.

    ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christopher W. Toscano, TFO, FBI
*Printed name and title*

Application submitted electronically by email/.pdf and attested to me and before me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3).

Date:  June 8, 2023

*Judge's signature*

City and state:    Rochester, New York

Hon. Mark W. Pedersen, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

STATE OF NEW YORK   )
COUNTY OF MONROE   )         ss:
CITY OF ROCHESTER   )

I, CHRISTOPHER TOSCANO, being duly sworn, depose and state:

1.       I am a Deputy with the Monroe County Sheriff's Office and have been assigned as a Task Force Officer (TFO) with the FBI's Child Exploitation Task Force since 2017. As a TFO, I am responsible for investigating the production, receipt, distribution, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). I have been involved in hundreds of federal child pornography investigations and have seen thousands of images of child pornography as defined by 18 U.S.C. § 2256(8).

2.       I submit this affidavit in support of an application for a warrant to search a Dell Precision 7540 Laptop (S/N JZNGYY2) which is currently secured at the FBI Office located in Rochester, New York, as further described in Attachment A (hereinafter the "SUBJECT DEVICE").

3.       As set forth in more detail below, there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1512(c)(1) (Destruction of Evidence in an Official Proceeding) and Title 18, United States Code, Section 2252A(a)(5)(B) (Possession of Child Pornography) (hereinafter the "TARGET OFFENSES") is located within the SUBJECT DEVICE.

4.       The information contained in this affidavit is based on my personal knowledge and investigation of this matter, my review of forensic examinations of digital devices seized

1

from NICOT, my training and experience, conversations with other law enforcement officers, victims and witnesses, and my review of documents, reports, and records gathered through the investigation of this case.

5.      Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every detail of the investigation.   Rather, I have set forth the facts that I believe are necessary to establish probable cause to believe that evidence, contraband, fruits, and instrumentalities of the TARGET OFFENSES are presently located within the SUBJECT DEVICE.

## MCSO Investigation

6.      On or about July 20, 2022, Cooperating Witness 1 ("CW1") and Victim 1 ("V1"), reported to the Monroe County Sheriff's Office ("MCSO") that V1 found a camera hidden in a ceiling vent in a shared bathroom of NICOT's residence.   CW1 and V1 were interviewed regarding the events that led to them reporting NICOT to MCSO.

## Summary of Interview with V1

7.      V1 reported that sometime between March 1, 2018, and June 1, 2018, when V1 was 14-years old, V1 found a small camera hidden on a bathroom shelf located in NICOT's residence.   V1 indicated the camera was positioned in a way so that it wasn't easily seen and appeared to be purposely hidden.   V1 indicated the camera was aimed at the sink.   V1 removed the camera from the bathroom and located an SD card inside the camera.   V1 inserted the SD card into a computer and discovered multiple video files of recordings captured by the camera in the bathroom and stored on the SD card.   These included videos

that depicted V1 utilizing the sink.  After observing the videos, V1 turned the device over to CW1.

8.      Sometime in the beginning of June 2022, when V1 was 18-years old, V1 found a second camera in the bathroom located in NICOT's residence.  V1 explained that while at the toilet, V1 observed a blinking light coming out of the ceiling vent for the bathroom fan. V1 stated that he opened the fan vent and located a small black camera aimed at the toilet. V1 said the camera was plugged into an electrical outlet inside of the fan vent.  V1 did not observe any storage cards in this camera.

### Summary interview with CW1

9.      In or around 2018, CW1 spoke with V1 about a small brass cube with two buttons on it that was observed in V1's bedroom.  According to CW1, V1 indicated finding it hidden in the common hallway bathroom of NICOT's residence and that it was facing the shower and could capture people getting in and out of the shower while nude.

10.     CW1 indicated that a small removable SD memory card was inside this camera.  CW1 and another individual looked at the footage on the SD card an observed V1 standing in the common hallway bathroom wearing shorts.  CW1 reported that the video files had dates embedded in the file names.  CW1 remembered looking at a calendar to compare what was going on during those dates and discovered that it was the same day friends were over for a birthday party.  CW1 indicated adults and kids had visited NICOT's residence for the birthday party and indicated they would have likely used that common bathroom.

11.     CW1 confronted NICOT about the hidden camera.  According to CW1, NICOT admitted to placing the hidden camera in the bathroom.  NICOT claimed he did so in order to find out why V1 had been taking so long in the bathroom.

12.     In or around June 2022, CW1 indicated that V1 located a second hidden camera in the bathroom ceiling exhaust fan.  CW1 indicated that no SD card was found inside this hidden camera.  CW1 further reported that, during this time, several adults and children were at NICOT's residence and had utilized the bathroom that contained the hidden camera.

### NICOT's "Intervention"

13.     V1 indicated that an "intervention" took place with NICOT and other individuals including CW1.  According to V1, NICOT acknowledged that he did in fact put the camera in the ceiling because he wanted to "keep tabs" on V1.  According to V1, NICOT indicated the camera live streamed video to an application on NICOT's cell phone.  During the intervention, NICOT indicated he had deleted the application off his cell phone and must have forgotten to remove the camera from the vent.

14.     CW1 confirmed that an intervention had taken place involving NICOT. During this intervention, CW1 indicated that NICOT admitted to placing both hidden cameras in the bathroom.  NICOT said he put the cameras in the bathroom to record V1 and find out why V1 was taking so long in the bathroom.  NICOT also acknowledged that he was able to view the video captured by the second camera remotely, and that was why there was not an SD card in the second camera.  According to CW1, NICOT showed CW1 his Amazon account, which indicated that NICOT purchased the second video camera on either March 6th or 7th of 2020.

4

15.     The "intervention" with NICOT was recorded, and that recording was made available to MCSO.

16.     MCSO listened to the recording, which was approximately 2 hours and 35 minutes long.  MCSO created a transcript of the audio.  The transcript, which I have reviewed, is consistent with CW1 and V1's accounts of the "intervention."

### Conversation with NICOT

17.     On or about July 21, 2022, members of the MCSO spoke to NICOT at his residence.  The conversation with NICOT was audio/video recorded.  In sum and substance, NICOT acknowledged purchasing and installing a small video camera in the first-floor bathroom of his home with the intention of checking up on V1.  NICOT indicated he was worried V1 was up to something and could possibly be doing drugs.

18.     NICOT admitted that he concealed the camera inside the bathroom ceiling fan and used the electrical outlet of the fan to power the camera.  NICOT stated the camera and associated application may have had the ability to record, but that he only viewed it live *via* an application that he downloaded on his phone.  NICOT admitted that the camera placement could have captured someone in the nude getting in or out of the shower.  However, NICOT indicated that would not have happened because that shower had a leak, and no one had used it for at least a year; everyone used the second-floor bathroom to shower.

19.     Throughout the conversation, NICOT changed his story several times about when he purchased and installed the camera.  At one point, NICOT stated it was more than a year ago.  This would have placed V1 well under the age of 18.  NICOT then changed his

5

story and stated he purchased it a year ago but didn't install it for several months after the purchase. NICOT claimed he never observed V1 doing anything wrong in the bathroom.

20.    NICOT was then confronted about the first hidden camera found in the bathroom a few years earlier. NICOT initially denied it, but ultimately admitted to purchasing that camera and placing it in the bathroom. NICOT indicated that he positioned the first hidden camera in such a way that it could have captured video of someone in the nude getting in or out of the shower.

21.    When asked about specific electronics that were currently in his home, NICOT indicated among many things that his laptops were currently in his first-floor home office along with his black Samsung S8 that was in a blue case.

22.    Following the conversation with NICOT, MCSO advised NICOT that they had a search warrant for the residence and the electronics.

### Execution of MCSO Search Warrant

23.    Upon executing the search warrant, MCSO observed several electronics in the first-floor room that NICOT identified as his home office. While searching NICOT's home office, MCSO located a book on tapes titled "Jesus among other gods." Inside the book on tapes was a PNY 1GB SD memory card.

24.    MCSO also found NICOT's Samsung Galaxy S8 cell phone sitting on his desk, as he previously indicated it would be, and seized the phone.

25.    MCSO also seized a black USB drive, a Samsung Galaxy S5, a SanDisk micro-SD card, and a Dell Laptop from NICOT's residence.

26.    Following the execution of the search warrant, these electronics were submitted to the MCSO Digital Forensics Unit for analysis.

## MCSO Digital Forensics Review

27.    MCSO conducted a forensics examination of the items described in Paragraphs 23-26, above.  According to MCSO the following were observed on each item:

a. Blue PNY 1GB SD memory card – Numerous photographs and one video depicting young boys and adult men showering in the nude with their genitalia exposed.  The video appears to have been recorded on a hidden camera without the knowledge of the young boys and adult men.  Also contained on this SD card was a photo collage of male genitalia.  This was in the form of ten still images.  Those ten images of male genitalia appear to be still images taken/snipped from the previously mentioned videos of the young boys and adult men showering.  The photo collage was labeled with what I believed to be the initials representing the first and last name of each individual portrayed in the collage.

b. Black USB drive – Video of a young boy showering in the nude with his genitalia exposed.  The video appeared to be recorded from a hidden camera without the boys' knowledge.

7

    c.   Samsung Galaxy S5 Cell Phone – A still image of a young male (later identified as V1) sitting on a toilet with his genitalia exposed.  The vent fins of a ceiling exhaust are visible in the image, which I believe indicates this image was captured by the camera that NICOT installed in the ceiling of his first-floor bathroom, as discussed above.

    d.   Samsung Galaxy S8 Cell Phone – A still image of a young male (later identified as V1) sitting on the toilet with his genitalia showing.  The vent fins of a ceiling exhaust are visible in the image, which I believe indicates this image was captured by the camera that NICOT installed in the ceiling of his first-floor bathroom, as discussed above.  This is a different image than the one described in Paragraph 27(c), above.

    e.   SanDisk Micro SD card – A video depicting NICOT setting up a hidden camera in the first-floor bathroom of NICOT's residence.  This appears to show NICOT setting up the first hidden camera, which V1 found in towels on a shelf of the bathroom wall.

28.     Based on my training and experience, I believe that each of the images and videos described in Paragraphs 27(a)-26(d) constitute child pornography as defined by 18 U.S.C. § 2256(8).

29.     CW1 and V1 were shown sanitized still photographs of the shower video found on the blue PNY 1 GB SD memory card, described in Paragraph 27(a), above.  CW1 and V1 immediately recognized the shower as one that is located in a specific church in Holley, New York.

### Identification of Victims

30.     On or about April 11, 2023, your affiant spoke with Victim 2 ("V2"), who is currently an adult.  In sum and substance, V2 was shown the video "Movie.wmv," which was recovered from the blue PNY 1GB SD memory card, and sanitized photographs of that video. V2 initially indicated he did not recognize the person or shower.  However, V2 later identified himself as the individual portrayed in the photographs and video.  When asked how old V2 was when the video was produced, V2 stated 13 or 14 years old.  V2 did not recognize the shower.

31.     The following is a synopsis of media your affiant observed on the PNY 1GB SD memory card pertaining to V2:

>      a.   "Snapshot 1 (4-14-2014 4-49 PM).png": A photograph depicting V2 with his penis exposed exiting the shower.

>      b.   "Movie.wmv": A video containing V2 entering and exiting the shower. V2 is naked with his penis exposed.

32.     On or about April 11, 2023, your affiant spoke with Victim 3 ("V3"), who is currently an adult.  In sum and substance, V3 was shown sanitized photographs that came from the following two files: (1) "Movie.wmv," which was recovered from the blue PNY 1GB SD memory card; and "0000039_Carved.asf," which was recovered from the black USB drive. V3 identified himself in each photograph. V3 also recognized the shower as the shower located in a specific church in Holley, NY (the same church previously identified by CW1

and V1).  When asked how old V3 would have been in the photographs shown to him, V3 stated 13 or 14 years old.

33.     The following is a synopsis of media your affiant observed on the PNY 1GB SD memory card and/or Black USB pertaining to V3:

a.  "0000039_Carved.asf": A video depicting V3 utilizing a towel to dry off with.  The face of V3 is exposed.

b.  "0000037_Carved.asf": A video depicting V3 exiting the shower naked with his penis exposed.

c.  "0000063_Carved.asf": A video depicting V3 entering the bathroom and removing his clothes.  V3 is further observed entering the shower naked and his penis is exposed.

d.  "Movie.wmv": A video containing V3 entering and exiting the shower. V3 is naked with his penis exposed.

34.     On or about April 14, 2023, your affiant spoke with Victim 4 ("V4"), who is currently an adult.  In sum and substance, V4 was shown sanitized photographs that came from the following two files located on the black USB drive: "0000010_Carved.asf" and "0000043_Carved.asf."   V4 indicated that the photographs appeared to depict him but acknowledged the images were difficult to see.  V4 was also shown the video "Movie.wmv," which was recovered from the blue PNY 1GB SD memory card.  V4 immediately identified himself and further acknowledged the original screen captures shown to him were in fact of

him.  When asked how old V4 would have been in the files, V4 indicated no older than 17, maybe 16 or 17 years old.

35.     The following is a synopsis of media your affiant observed on the PNY 1GB SD memory card and/or Black USB pertaining to V4:

  a. "0000010_Carved.asf": A video depicting V4 entering the bathroom and removing his clothes.  V4 is then seen entering the shower in which his penis is exposed.

  b. "0000043_Carved.as": A video depicting V4 exiting the shower and utilizing a towel to dry off.

  c. "0000008_Carved.as": A video depicting V4 opening the shower curtain following a shower.  V4 is observed touching his penis and then shortly thereafter exiting the shower.

  d. Movie.wmv": A video containing V4 entering and exiting the shower. V4 is naked with his penis exposed.

36.     On or about April 20, 2023, members of the FBI spoke with Victim 5 ("V5"), who is currently an adult.  In sum and substance, V5 was shown sanitized photographs that came from the following three files: "Movie.wmv," which was recovered from the blue PNY 1GB SD memory card; and "0000047_Carved.asf" and "0000053_Carved.asf," which were recovered from the black USB drive.  V5 identified himself in the photographs.  V5 acknowledged he attended the specific church in Holley, NY.  MV5 indicated he used the shower at the church on a regular basis.  MV5 was unsure as to when the video was taken.

11

When agents suggested the video may have been created in 2012, MV5 agreed that could be accurate.

37.     The following is a synopsis of media your affiant observed on the PNY 1GB SD memory card and/or Black USB pertaining to V5:

      a.  "0000047_Carved.asf": A video depicting V5 entering the bathroom with his face exposed.

      b.  "0000053_Carved.asf": A video depicting V5 naked with his penis exposed entering the shower.

      c.  "Movie.wmv": A video containing V5 entering and exiting the shower. V5 is naked with his penis exposed.

**Artifact Information**

38.     Your affiant reviewed MCSO's forensic report of its analysis of the digital devices seized from NICOT's residence.   Upon reviewing these findings, your affiant observed the meta data associated with the devices and files.   It should be noted that below is a summary review:

      a.  Device: SanDisk Micro SD Card; File: "MOVI0003" -- A video depicting NICOT setting up a hidden camera in the first-floor bathroom of NICOT's residence.

          1.  Created Date – 6/14/2017

    2. Last Accessed Date – 8/19/2019

    3. Last Modified Date – 6/14/2017

b. Device: Blue PNY 1GB SD memory card; File: "Movie.wmv" -- A video approximately 14 minutes and 30 seconds in length. The video depicts what appears to be a collection of different videos. Further observed were various boys and adult men utilizing a shower and at times, their genitalia are exposed. This video contains V2 through V5.

    1. Created Date – 8/26/2012

    2. Last Accessed Date – 5/28/2014

    3. Last Modified Date – 7/26/2012

c. Device: Blue PNY 1GB SD memory card; File: "palette.PNG" -- A photograph depicting a collage of ten still images that portray male genitalia. The still images appear to have been taken/snipped from videos observed on the above seized digital devices that depict young boys and adult men showering. The photo collage was labeled with what I believe to be the initials representing the first and last name of each individual portrayed in the collage.

    1. Created Date – 8/26/2012

    2. Last Accessed Date – 6/2/2014

13

3. Last Modified Date – 7/19/2012

d. Device: Samsung Galaxy S5; File: "1611357789084.jpg" -- This is an image file that depicts V1 with his penis exposed sitting on the bathroom toilet.

1. Contained in the image is the date/time stamp – 2021-01-09 11:32:02.

2. Created Date – 1/22/2021

e. Device: Samsung Galaxy S8; File: [MD5] "6b269ab9e3fae0f914ac2ad2564b0a69" -- This is an image file that depicts V1 with his penis exposed sitting on the bathroom toilet.

1. Contained in the image is the date/time stamp – 2021-10-14 06:27:53.

2. Created Date – 10/15/2021

39. The Samsung Galaxy S8 contains the trade inscription "Manufactured in Vietnam," the PNY 1GB SD card contains the trade inscription "MADE IN JAPAN," the SanDisk Micro SD card contains the trade inscription "MADE IN CHINA," and the Samsung Galaxy S5 contains the trade inscription "MADE IN CHINA."

14

## ARREST OF NICOT AND SEIZURE OF THE SUBJECT DEVICE

40.     On or about May 30, 2023, I obtained a warrant from the Hon. Marian Payson to arrest NICOT based on a Criminal Complaint charging NICOT with violations of Title 18, United States Code, Section 2251(a) (Production of Child Pornography) and Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography).

41.     On or about May 31, 2023, NICOT was arrested and taken into custody. NICOT was released by the Court that same day with conditions.

42.     On or about June 5, 2023, I was contacted by NICOT's former employer.  The employer informed me that, after NICOT's arrest, NICOT resigned from his employment but had refused to return his company-issued laptop (*i.e.*, the SUBJECT DEVICE).

43.     According to the former employer, the SUBJECT DEVICE was issued to NICOT on or about November 12, 2019, and NICOT was the only user of the SUBJECT DEVICE.  Members of the company's IT department had the ability to remote access company devices if needed but the company did not monitor employee devices.

44.     According to the former employer, the company became aware of the charges pending against NICOT on or about Friday June 2, 2023.  At that time, the SUBJECT DEVICE was still in NICOT's possession.

45.     Due to the nature of the charges, on or about Saturday June 3, 2023, the former employer's IT department remotely restricted NICOT's access to the SUBJECT DEVICE. This was done as a security measure to ensure NICOT was unable to tamper with or alter the SUBJECT DEVICE in anyway.

15

46.    On or about June 6, 2023, NICOT's former employer informed me that NICOT claimed to have "personal files" on the SUBJECT DEVICE, and therefore was refusing to return the SUBJECT DEVICE to his employer.

47.    On or about June 7, 2023, NICOT turned the SUBJECT DEVICE over to his former employer but asked the former employer to extract copies of NICOT's "personal files" and provide them to him.   NICOT's employer agreed to retrieve the "personal files" for NICOT following an analysis conducted by its IT department.

48.    That day, the former employer's IT department informed me that it had located files that appeared to be pornographic in nature on the SUBJECT DEVICE.   NICOT's former employer then turned the SUBJECT DEVICE over to the FBI for further analysis.

49.    NICOT's former employer also turned over a list of "personal files" that NICOT asked the former employer to remove from the SUBJECT DEVICE.   This list included the following:

> a.  Lions folder on Desktop
>
> b.  Local documents folder (not the one on Onedrive)
>
> c.  Vacation photos under pictures
>
> d.  "there may be others.  These are the ones I could think of."

50.    NICOT's former employer conducted a cursory search of the laptop to retrieve the requested personal data for NICOT.   During their review, they observed several file names that appeared to be questionable and pornographic in nature.   A photograph was taken and ultimately provided to your affiant.  I reviewed the photograph and observed, among many things, the following:

a. File Titles

  i. cum_protector_secretsex.norm.mp3

  ii. DolorususDulcitas-ma-mid.mp3.mp3

  iii. ElectroBalls – Pulse Odyssey.mp3

  iv. Make me cum now.mp3

  v. hotie01.mp3

  vi. Hottie.mp3

  vii. Hottie2.mp3

  viii. IdcX093_fastfuck.mp3

  ix. IdcX093_nice long fuck.mp3

  x. IdcX093_nicefuck.mp3

  xi. IdcX093_slowfuck.mp3

  xii. IdcX093_tease_and_fuck.mp3

  xiii. leatherjeans_ecum1.mp3

  xiv. Megamix.mp3

  xv. Milked Dry.mp3

51.     According to the employee who reviewed the SUBJECT DEVICE, the photograph taken was a sample of what he had observed and indicated that there appeared to be more files of similar substance.  This employee further observed in the recycle bin several files that he believed were deleted following NICOT's arrest.  This employee indicated that upon viewing this material he did not finish his examination of the laptop and thus is unaware of what else could be contained on the SUBEJCT DEVICE.

52.    The SUBJECT DEVICE is currently stored and maintained at the FBI Office located in Rochester, New York.  The SUBJECT DEVICE has not been viewed by any members of law enforcement since the SUBJECT DEVICE was obtained from NICOT's former employer.

## TRAINING AND EXPERIENCE

53.    Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution and possession of child pornography:

  a.    Those who receive and attempt to receive child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

  b.    Those who distribute and possess child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videos, books, slides and/or drawings or other visual media.  Such individuals often use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual act.

  c.    Those who distribute and possess child pornography often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videos, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  These individuals sometimes retain pictures, films, videos, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, and child erotica for many years.

18

d.    Likewise, those who distribute and possess child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer, or other digital device, and surrounding area. These collections are often maintained for several years and are kept close by, to enable the collector to view the collection, which is valued highly. In many cases, the individual may try to hide the collection or may use a computer, such as a laptop, that can easily be transported from one location to another, in order to keep his collection private and not make it known to other individuals he or she may be residing with. One method of transportation includes but is not limited to, the use of vehicles.

e.    Those who distribute and possess child pornography also may correspond with and/or meet others to share information and materials; often maintain correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of individuals with whom they have been in contact and who share the same interests in child pornography. Those who distribute and possess child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

f.    Files of child pornography stored on digital devices, such as thumb drives, can sometimes be viewed by law enforcement even after having been deleted.

g.    Files of child pornography stored on digital devices are often copied onto other digital storage media, such as thumb drives, computers, or external hard drives, by those engaged with the child pornography activity.

## CONCLUSION

54.    Based upon the forgoing, the undersigned respectfully submits that there is probable cause to believe that evidence, fruits, contraband, and instrumentalities of the TARGET OFFENSES are presently located within the SUBJECT DEVICE.

CHRISTOPHER TOSCANO
Task Force Officer
Federal Bureau of Investigation

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 8th day of June 2023

HON. MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A
### Property to Be Searched

The property to be searched is the below-pictured Dell Precision 7540 Laptop (S/N JZNGYY2) (hereinafter "SUBJECT DEVICE), which is currently located at the FBI Office in Rochester, New York.





## ATTACHMENT B
## Items to be Search for and Seized

All records, documents, materials and files that constitute evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Section 1512(c)(1) and 2252A(a)(5)(B), including:

1.  Any and all evidence of the deletion or alteration of files on or after May 31, 2023;

2.  Any visual depictions, including still images, videos, films, or other records, in whatever form, of child pornography as defined by Title 18, United States Code, Section 2256(8);

3.  Obscene material and files containing obscene material in any form;

4.  Information, correspondence, communications, and other materials constituting evidence of, or pertaining to, the sexual exploitation of minors;

5.  Any and all evidence of the identity of any minor depicted in any child pornography found on the SUBJECT DEVICE;

6.  Any and all records, documents, e-mails, telephone numbers, text messages (in electronic or hardcopy), correspondence, communications, images, internet search history, or other information, which evince a sexual interest in minors or child exploitation.  Any and all evidence of the identity of any minor with whom the owner or user of the SUBJECT DEVICE communicated;

7.  Any and all evidence of pertaining to the identity of any individual who owned, possessed, or used the SUBJECT DEVICE.

8.  Any and all records, documents, e-mails, telephone numbers, text messages (in electronic or hardcopy), correspondence, communications, images, or other information, which evince a sexual interest in minors or child exploitation;

9.  Records relating to the origin of any file containing child pornography or obscene material, or whiles which demonstrate a sexual interest in children, including internet sites, social media applications, file sharing applications, or chat applications.